# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

# ORANGEBURG DIVISION

| | |
|---|---|
| WILLIE SHIRER, | ) |
| Plaintiff, | ) Civil Action No. 5:07-1156-MBS-JRM |
| v. | ) |
| TRI-COUNTY ELECTRIC COOPERATIVE, INC., | ) **REPORT AND RECOMMENDATION** |
| Defendant. | ) |

Plaintiff, Willie Shirer ("Shirer"), filed this case on April 24, 2007, alleging discrimination based on his race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.,* as well as his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621.[1] The Defendant is his former employer, Tri-County Electric Cooperative, Inc. ("TCEC"), Shirer having retired after filing this action. TCEC filed a motion for summary judgment on February 18, 2009. Shirer filed an opposition memorandum on March 17, 2009. TCEC filed a reply on March 24, 2009.

## **Standard for Summary Judgment**

When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* Courts take special care when considering summary judgment in employment discrimination cases because states of

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C.

mind and motives are often crucial issues. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir.), *cert. denied*, 484 U.S. 897 (1987). This does not mean that summary judgment is never appropriate in these cases. To the contrary, "'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.'" *Id.* (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

In this case, defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." *Id.* at 718-19 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Id.* and Doyle v. Sentry Inc., 877 F. Supp. 1002, 1005 (E.D.Va. 1995). Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits [*see* Fed. R. Civ. P. 56(e)], depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. Baber, citing Celotex Corp., *supra*. Moreover, the non-movant's proof must meet "the substantive evidentiary standard of proof that

2

would apply at a trial on the merits." Mitchell v. Data General Corporation, 12 F.3d 1310, 1316 (4th Cir. 1993) and DeLeon v. St. Joseph Hospital, Inc., 871 F.2d 1229, 1233 (4th Cir. 1989), n.7. Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547 (5th Cir. 1987) and Evans v. Technologies Applications & Services Co., 875 F. Supp. 1115 (D.Md. 1995).

**Facts**

The complaint specifically alleges disparate treatment based on race and age. However, the parties have only addressed a claim of a hostile work environment alleged to have occurred over a lengthy part of Shirer's career. Shirer has not identified an adverse employment action which could support a claim of disparate treatment. Therefore, the undersigned will address only the hostile work environment claim.

Shirer is an African-American born January 31, 1947. He became a District Manager for TCEC in 1997, and served in that capacity until he retired in January of 2009. He was supervised by two white General Managers, Robert Wannamaker ("Wannamaker"), from 1997 through July of 2004, and Robert Paulling ("Paulling") who replaced Wannamaker when he retired. Shirer does not allege that racial epithets or age based derogatory comments were made to him. Instead, the theory of his case is that Wannamaker and Paulling did not give him the respect and support he needed to perform his job as District Manager because of his race and age. Because of the long duration of service as District Manager and the amorphous nature of the allegations, a detailed factual chronology of events cannot be included in this Report and Recommendation. The main evidence which Shirer uses to support his claim is a group of memoranda he wrote addressing his concerns as District Manager. Copies are attached to Shirer's opposition memorandum and to TCEC's motion

for summary judgment (*see* Exhibit 4).

TCEC is a consumer owned electric distribution organization which serves portions of six counties in the Midlands of South Carolina. TCEC's main office is in St. Matthews. It has two other offices at Eastover in Richland County, the Richland District Office ("RDO"), and at Santee, the Santee District Office ("SDO"). Shirer was the District Manager at the RDO. Donnie Herron, who is white, was the District Manager of the SDO at all relevant times.

In the charge of discrimination filed with the South Carolina Human Affairs Commission ("SCHAC"), Shirer asserted race and age discrimination and provided the following narrative:

> I am the only black District Manager employed by Respondent. One of my responsibilities is to manage employees under my direct supervision. My authority has been hampered and undermined on several occasions. The General Managers would sabotage my efforts to manage white male employees, condone insubordination of white male employees towards me and terminate black employees without my knowledge and/or input for lesser infractions and, on one occasion, without just cause. One of my employees was issued a written reprimand by me addressing disciplinary issues. The General Manger, Dean Blackburn[2] (white male, age: less than 40) condoned the actions of this employee and transferred him to another location. Other similarly situated District Managers are not subjected to these terms and conditions.

(Def.Mem., Ex. 2).

Shirer specifically lists in his complaint, five areas in which the General Managers undermined him as a District Manager:

> (a) Disregarding communications from Plaintiff–oral and written–relative to disciplinary action to be taken against white male employees for failure to comply with agency policies and practices.
>
> (b) Transferring white male employees who committed infractions, while under the direct supervision of Plaintiff, to other county job cites in lieu of taking the appropriate disciplinary action recommended by the Plaintiff.

---

[2]Actually Blackburn was the employee, not the General Manager.

4

(c) Unjustifiably terminating black employees under Plaintiff's direct supervision without the Plaintiff's knowledge or input.

(d) Failing to terminate white employees when such action was justifiable.

(e) Condoning reported racial acts toward Plaintiff by white male employee (i.e., white male signed and left on Plaintiff's desk a copy of "Certificate of Upgrade to Complete Asshole") in that no action was taken to deter same.

The focus of the parties' memoranda is on these five areas. This Report and Recommendation, therefore, centers on these allegations.

### 1. **Discipline of White Employees**

Shirer asserts that he was subjected to a hostile work environment because the General Managers failed to follow his recommendations concerning discipline of white employees. However, there appears to be only one documented instance. On September 26, 2006, Shirer met with Paulling about a white employee under his supervision, Wilson Lloyd ("Lloyd"). Shirer brought up three areas of concern with respect to Lloyd's job performance. On October 16, 2006, Shirer wrote a memo to Paulling advising that Lloyd continued to be "non-compliant and insubordinate." Based on Shirer's annual performance evaluation of Lloyd, Shirer recommended that Lloyd not receive the TCEC's full merit raise. (Def.Mem., Ex. 5). Shirer and Paulling again discussed Lloyd on October 19, 2006. At that meeting Shirer recommended that Lloyd be suspended for three to five days. (Def.Mem., Ex. 6).

The record shows that Paulling partially followed Shirer's recommendation. Lloyd was give a 3% pay increase instead of the full increase of 4%. (Def.Mem., Ex. 7). According to Paulling, he reviewed Lloyd's record, noted that despite the concerns Shirer had rated him "just under 'exceptional'" on the 2006 performance evaluation (Def.Mem., Ex. 8), and concluded that "suspension was simply not warranted by the circumstances." (Paulling Aff., ¶ 18).

### 2. Transfer of White Employees

Shirer alleges that he was subjected to a hostile work environment because four white employees were transferred from his supervision in lieu of TCEC taking appropriate disciplinary action against them. The employees identified by Shirer are Lloyd, Randy Cribb ("Cribb"), Jeff Tisdale ("Tisdale"), and Dean Blackburn ("Blackburn"). The record shows that Wannamaker transferred both Cribb and Tisdale from the RDO to St. Matthews. Cribb was transferred in 1999 due to a perceived personality conflict with Shirer. Tisdale was transferred in 2004. After being admonished by Shirer for his performance and attendance, Tisdale offered his resignation to Wannamaker. Wannamaker transferred Tisdale in an effort to salvage his employment. With respect to Cribb and Tisdale, Shirer complained they were transferred by Wannamaker without consultation with him. (Paulling Aff., ¶¶ 15-16).

Paulling transferred Blackburn from the RDO to St. Matthews in 2005 due to a perceived personality conflict with Shirer. The change of supervisors apparently did not improve Blackburn's behavior and he was terminated in 2006 for being disruptive. (Paulling Aff., ¶ 17).

Lloyd was transferred from the RDO to St. Matthews in 2008 together with all TCEC service employees who were then placed under the supervision of an African-American manager. (Paulling Aff. ¶ 18).

### 3. Termination of African-American Employees

Shirer alleges that TCEC unjustifiably terminated African-American employees under his supervision without his knowledge or input. At his deposition, Shirer only identified one such employee, James Pringle ("Pringle"). (Pl.Dep., Vol.1, pp. 183-184). The record shows that Pringle suffered an injury and was placed on leave of absence under TCEC policy. Over a year later, he was

terminated because he had exhausted all of his leave. (*Id.,* 181-184).

### 4. **Failure to Terminate White Employees**

Shirer asserts that he was subjected to a hostile work environment because TCEC failed to terminate white employees when termination was justified. Shirer has identified Lloyd, Tisdale, Cribb, and Blackburn, the same employees who were transferred, as white employees who should have been terminated. However, the record does not show that Shirer ever recommended that these employees be discharged or that he wanted them discharged. *See* Pl.Dep.,Vol. 2, pp. 40-41 (as to Lloyd); Pl.Dep.,Vol. 2, p. 14 (as to Tisdale); Pl.Dep.,Vol 1, pp. 197-198 (as to Cribb); and Pl.Dep.,Vol 1, p. 130 (as to Blackburn).[3]

### 5. **Condoning Racial Acts Direct at Plaintiff by White Employees**

According to Shirer, Lloyd and Blackburn left a document on his desk entitled "Certificate to Upgrade to Complete Asshole" ("Certificate"). The Certificate was removed from Shirer's desk in his absence. Shirer advised Paulling about the incident, but did not recommend any discipline be administered to Lloyd and Blackburn. (Pl.Dep.,Vol 1, pp. 204-207 and Paulling Aff., ¶ 25).

### 6. **Lack of Communication**

During his deposition, Shirer complained about a lack of adequate communication between the St. Matthews office and the RDO. Shirer believes that he should have been given the courtesy of advance notification of policy changes. The complaints are referenced in a June 4, 2006 memorandum from Shirer to Paulling titled "Lack of Communication & Clarification of Routine Changes." In that memorandum, Shirer complained that (1) a "summer hours" flyer was sent out changing the office hours of the RDO without consulting him; (2) the RDO radio frequency was

---

[3]As noted above, Blackburn was terminated in 2006.

changed without notification; and (3) a lower-level employee changed the type of bank bag RDO should use in making deposits. Shirer felt that he should have been informed of this change by Paulling. Paulling responded to Shirer's memorandum with a memorandum dated June 7, 2007. (Def.Mem., Ex. 4).

The TCEC memorandum in support of summary judgment reflects other incidents where Shirer complained in his deposition that he was not informed in advance or was not shown the proper courtesy or respect.[4] The memoranda written by Shirer generally show a lack of communication in a chain of command from the headquarters at St. Matthews to the RDO. Shirer fails to address most of these issues in his opposition memorandum. However, he does raise an issue of disparity in pay between white and African-American employees. This was one of the issues raised in Perkins-Brown et al. v. Tri-County Electric Cooperative, 3:06-3512-CMC-JRM. In that case it was concluded that the plaintiffs had not shown that they received disparately lower pay. Shirer's complaint is that he advised Paulling, and Paulling said he would look into the issue, but never got back with Shirer or the employees.

## Discussion

Shirer asserts that he was subjected to a hostile work environment due to his race and age. Title VII makes it unlawful for an employer to discriminate against an employee with respect to compensation, terms, conditions or privileges of employment on the basis of race. 42 U.S.C. § 2000e-

---

[4] For instance, Shirer testified that (1) TCEC declined his suggestion to change accounts from one bank to another; (2) subordinates switched "call" without notifying him; (3) TCEC provided him a new truck, but it had a permanent decal instead of one that was removable: (4) he was required to meet with a Board member to explain a "call" situation; (5) he was not notified in advance that a new drive-in window was to be installed at the RDO, and (6) he was not notified in advance that security cameras were to be installed at the RDO.

8

2(a). This includes creating or allowing a hostile work environment based on race. EEOC v. Central Wholesalers, Inc., __F.3d __, 2009 WL 2152348 (4th Cir. 2009). Similarly, the ADEA prohibits subjecting an employee to a hostile work environment based on age. Bagir v. Principi, 434 F.3d 733 (4th Cir. 2006). To prove a hostile work environment, the plaintiff must show that: (1) he was harassed because of his race or age; (2) the harassment was unwelcome; (3) the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) some basis exists for imputing liability to the employer. Gilliam v. South Carolina Department of Juvenile Justice, 474 F.3d 134, 142 (4th Cir. 2007); Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc).

In Faragher v. City of Boca Raton, 524 U.S. 775 (1998), the Supreme Court reaffirmed its previously articulated standard for determining when a plaintiff has established a hostile work environment, stating that a plaintiff must establish that the environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher, 524 U.S. at 787 (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22(1993)). Actionable harassment occurs when the workplace is "permeated with discriminatory intimidation, ridicule, and insult." Harris, 510 U.S. at 21. Title VII and the ADEA are not "general civility code[s]." Oncale v. Sundowner Offshore Services, Inc., 523 U.S,. 75, 80 (1998). "Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe and pervasive standard." EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008). "[C]omplaints premised on nothing more than rude treatment by co-workers, callous behavior by supervisors, or a routine difference of opinion and personality conflict with one's supervisors are not actionable under Title VII" or the

ADEA. *Id.*

**1. Continuing Violation**

TCEC argues that Shirer's claims are limited to those instances that occurred within 300 days of the filing of the administrative charge with SCHAC. Acceptance of this argument would effectively mean that the claims occurring while Wannamaker was the General Manager of TCEC would not be considered. Shirer counters that he is entitled to invoke the continuing violation doctrine which would entitle him to litigate all his claims that arose after he became District Manager of the RDO in 1997.

A plaintiff is required to file an administrative charge of discrimination with the appropriate agency within 300 days (in this case) of the alleged discriminatory action. 42 U.S.C. § 2000e-5(e)(1). In National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), the Supreme Court addressed the application of this statute to hostile work environment claims. The Court noted that hostile work environment claims, by definition, involve a continuous course of conduct, and held that "the employee need only file a charge within...300 days of any act that is part of the hostile work environment." *Id.* at 118. A court must "determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." *Id.* at 120. If plaintiff shows that the incidents are related and at least one falls within the statutory time period, the hostile work environment claim is not time barred. *See* White v. BFI Waste Services, 375 F.3d 288, 292-293 (4th Cir. 2004) and Gilliam, 474 F.3d at 139-140. It is undisputed that some of the events about which Shirer complains fall within the 300 day filing period. For the purpose of summary judgment, all the similar events, i.e., that Shirer was allegedly unsupported by both Wannamaker and Paulling, should be considered.

**2. Race and Age Based Harassment**

To establish a prima facie case of a hostile work environment, Shirer must produce evidence that the conduct about which he complains was based on his race or age. In this regard, he "must show that 'but for' [his] race [and age]...[he] would not have been the victim of the alleged discrimination." Gilliam, 474 F.3d at 142, quoting Causey v. Ballog, 162 F.3d 795, 801 (4th Cir. 1998).

Shirer has not shown that his alleged harassment was based on his race or age. First, there is no direct evidence that any of the conduct of Wannamaker, Paulling, or any of Shirer's subordinates was motivated by racial or age animus. Even the Certificate left for Shirer by Lloyd and Blackburn contained no racial or age based overtone. Shirer points to no evidence that derogatory comments were made to him about his race or age. Second, although Shirer was entitled to show that Wannamaker and Paulling treated him differently than the similarly-situated white District Manager of the SDO on the basis of race or age, he has not done so. Third, even if Shirer was able to show that Wannamaker and Paulling disliked or disrespected him resulting in a more stressful or less favorable environment, that fact, "absent some independent evidence of racial [or age] animosity, is not sufficient to establish a prima facie claim." Gilliam, 474 F.3d at 143, citing Hawkins v. PepsiCo, Inc., 203 F.3d 274, 281 (4th Cir. 2000).

**3. Severe and Pervasive**

TCEC further argues that Shirer cannot establish a prima facie case because the conduct about which he complains was not sufficiently severe or pervasive "to change [ ] the terms and conditions of employment." Faragher, 524 U.S. at 788. Shirer concedes that he was not confronted with any "overt racist [or age related] acts" but argues that the failure of Wannamaker and Paulling to properly

respond to his memoranda and to support him "involves a more insidious form of discrimination but it is still discrimination nonetheless." (Pl.Mem., 6).

In considering a plaintiff's claim that he was subjected to a hostile work environment, the Court must consider the totality of the circumstances. Relevant factors "may include the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23. "To be actionable, the conduct must create an objectively hostile or abusive work environment, and the victim must also perceive the environment to be abusive." Spriggs v. Diamond Auto Glass, 242 F.3d 179, 184 (4th Cir. 2007).

For the purpose of summary judgment, the undersigned accepts that Shirer subjectively felt under-appreciated based on his race and/or age. However, in the light most favorable to Shirer, he has failed to show that the conduct was objectively abusive. First, as noted above, Shirer does not rely on "overt" acts. Second, it must be observed that Shirer was not in direct physical contact with Wannamaker or Paulling. Shirer was located at the RDO and the General Managers were in St. Matthews. There are no specific instances where Shirer was physically threatened or publicly humiliated in front of other employees by Wannamaker or Paulling. There was no time when the RDO was "permeated with discriminatory intimidation, ridicule, or insult." Harris, 510 U.S. at 21-22. Further, the conduct occurred over a protracted period of time, Shirer's tenure as District Manager, and is best described as sporadic. Last, the conduct did not unreasonably interfere with Shirer's performance. He was consistently given good evaluations, never demoted, and does not allege he was not properly compensated. Although Shirer may have suffered "bruised or wounded feelings," EEOC v. Sunbelt Rentals, Inc., 521 F.3d at 315, he has not shown an objectively hostile work

environment.

## **Conclusion**

Based on a review of the record, it is recommended that Defendant's motion for summary judgment be **granted**.

_____
Joseph R. McCrorey
United States Magistrate Judge

Columbia, South Carolina

August 17, 2009